In re Brian **CHAMBERS** Debtor.

**Brian Chambers, Plaintiff,**

**v.**

**Greenpoint Credit, Defendant.**

**No. 04–3173.**

United States Bankruptcy Court, N.D.Ohio.

Feb. 11, 2005.

Melan M Forcht, Law Office of Melan M. Forcht, Toledo, OH.

David J Demers, Demers and Cohen, LLC, New Albany, OH.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff/Debtor's Complaint

for Violation of the Discharge Injunction as set forth in 11 U.S.C. § 524(a). At the conclusion of the Trial, the Court took the matter under advisement. The Court has now had the opportunity to review the applicable law, the evidence presented, as well as the arguments made by the Parties' respective legal counsel. Based upon this review, the Court finds that the Defendant violated the Discharge Injunction, and thus, to the extent set forth herein, sanctions are appropriate.

The Debtor, Brian Chambers, voluntarily sought the protections of this Court through the filing of a petition under Chapter 7 of the United Bankruptcy Code. The Defendant, Green Point Credit, is the holder of a prepetition consensual lien against a home which the Debtor, at the time he sought relief in this Court, maintained both a possessory and a fee interest. In his bankruptcy petition, the Debtor set forth the Defendant as the holder of a secured claim, along with his intention to reaffirm on this debt. As a creditor listed in the Debtor's bankruptcy petition, the Defendant received timely notice of this bankruptcy case.

While the Debtor's bankruptcy case was being administered, the Defendant contacted both the Debtor and his wife on numerous occasions regarding both the payment of its claim and the Debtor's intention to reaffirm on the debt. Such contact included representatives of the Defendant initiating phone calls and, on at least two occasions, making short personal visits to the property secured by its lien. Once their bankruptcy case was filed, neither the Debtor nor his wife made any payments to the Defendant, with the Debtor eventually informing the Defendant that, in contrast to his original intention, they would be vacating the property in July, which they did.

On June 12, 2003, this Court, pursuant to § 727(a) of the United States Bankruptcy Code, entered an order granting to the Debtor a discharge of all his dischargeable debts. Approximately one month later, the Defendant filed an action in state court for both the replevin of its property and seeking a judgment against the Defendant, personally, for any deficiency that may result once the property sold. During this same period of time, the Defendant also sent notices to the Debtor respecting his personal liability for any deficiency judgment that may be obtained against him. Based upon this course of conduct, the attorney which the Debtor had originally retained for his bankruptcy case sent a letter to the Defendant reminding it of the Debtor's discharge in bankruptcy and demanding that they discontinue their contacts with the Debtor. For reasons, however, not fully explained, the Defendant thereafter filed a motion for default judgment against the Debtor in his personal capacity, asking that it be awarded $36,748.60 in deficiency damages.

At the end of 2003, with the Defendant continuing to pursue its action against him, the Debtor retained new legal counsel, who was subsequently successful in having the Defendant dismiss its action against him; but not until January 26, of the following year, did the Defendant formally withdraw its motion for default judgment. On January 24, 2004, and continuing through the early part of 2004, Debtor's new legal counsel sent letters to the Defendant regarding its actions, and offering a monetary settlement of the matter. In response, the Defendant, although ostensibly accepting overall liability, declined those settlement offers made by Debtor's legal counsel. Debtor's legal counsel, however, did not formerly initiate formal legal action, through the commencement of the instant adversary proceeding, until May 31, 2004, opting instead to continue its

settlement negotiations with the Defendant.

## LEGAL DISCUSSION

The instant complaint is brought for a violation of the discharge injunction, and the recovery of damages incurred as the result of the breach. The adjudication of this matter is deemed a core proceeding for which this Court has been conferred by Congress with the jurisdictional authority to enter final orders. 28 U.S.C. § 157(b)(1); *In re Latanowich*, 207 B.R. 326, 332–33 (Bankr.D.Mass.1997).

■ Once a debtor is granted a discharge, § 524(a) gives rise to an injunction. In general terms, this injunction prevents a creditor from attempting to collect on any prepetition debt owed by a debtor, in so far as it involves the debtor's personal liability, unless such debt is included in one of the limited category of debts excepted from discharge. In an action against a creditor for a violation of the injunction, the Sixth Circuit Court of Appeals has held that, in contrast to a violation of the automatic stay of § 362(a), a debtor has no private cause of action. *Pertuso v. Ford Motor Credit*, 233 F.3d 417, 421 (6th Cir.2000). Instead, when a violation of the discharge injunction does occur, a debtor's sole avenue of recourse—and the one for which is the traditional remedy for a violation of an injunction—is to bring an action against the creditor for contempt. *Id.; In re Perviz*, 302 B.R. 357, 370 (Bankr.N.D.Ohio 2003).

In this particular matter, whether a contemptible violation of the discharge injunction occurred is not at issue. The Defendant acknowledged, correctly, that by attempting to collect on a deficiency balance arising from the sale of its collateral—both through the employment of legal process and then by sending letters—that an intentional violation of the discharge injunction occurred. Instead, at issue in this matter is the extent to which the Debtor and his legal counsel are entitled to be compensated for the Defendant's breach of the discharge injunction.

■ Compensatory damages operate and are meant to "make whole," as far as possible, a party injured as the proximate result of the actions of another. *Accord Eau Claire County v. Loken (In re Loken)*, 32 B.R. 205, 207 (Bankr.D.Wis.1983). By contrast, when a party is in contempt, the imposition of sanctions, not an award of damages, is the appropriate remedy as, by knowingly violating a court order, the contemptor's actions transgressed the court's authority—any damage to an individual party, no matter the seriousness of the transgression, is merely incidental.

■ As a transgression against the court, broad discretion is invested in the court in selecting an appropriate sanction. *In re Tubbs*, 302 B.R. 290, 291 (Bankr. W.D.Ark.2003). Although a variety of sanctions are available,—e.g., a fine paid into the court—it is recognized that, when faced with a contemptible violation of the discharge injunction, the contemptor's conduct is likely to have caused the debtor to incur damages. As such, courts generally permit, as a sanction, an award of damages to the debtor including attorney fees. *See In re Goodfellow*, 298 B.R. 358 (Bankr. N.D.Iowa 2003); *Walker v. M & M Dodge, Inc. (In re Walker)*, 180 B.R. 834 (Bankr. W.D.La.1995).

In the case of *Miller v. Chateau Communities, Inc. (In re Miller)*, this practice was recognized by the Sixth Circuit Court of Appeals wherein it upheld an award of damages stemming from a discharge injunction violation that occurred on account of a lessor's repeated attempts to collect postpetition rent. 282 F.3d 874, 875 (6th Cir.2002). In like fashion, this Court has

traditionally awarded actual damages plus attorney fees to a debtor injured by a contemptible violation of the discharge injunction. *In re Perviz*, 302 B.R. 357 (Bankr.N.D.Ohio 2003); *Mayer v. Huntington Nat'l Bank (In re Mayer)*, 254 B.R. 396, 397–98 (Bankr.N.D.Ohio 2000). In this particular matter, considering the Defendant's clear breach of the discharge injunction, the Court can see no reason to deviate from this practice. Hence, the structure of this Court's sanction against the Defendant will take the form of an award of monetary damages in the Debtor's favor.

■ As taken from his complaint, the Debtor seeks three types of monetary damages: (1) direct damages in the amount of $3,000.00; (2) attorney fees totaling $2,212.50; and (3) punitive damages of an unspecified amount. It is the Debtor's burden to establish his entitlement to each of these types of damages. And, as applied here, the Court finds that, while overall the Debtor is entitled to an award of damages, the Debtor has not fully sustained his burden with respect to the total damages sought. Beginning with the issue of direct damages, the reasons for this decision are now explained.

The Debtor bases his entitlement to direct damages on a combination of three things: (1) legal fees already paid; (2) having missed 12–15 days of work to address the Defendant's misconduct; and (3) emotional distress. While each of these grounds, if established, is compensable, the extent to which the Debtor relies on these grounds is, in varying degrees, not fully supported. *In re Perviz*, 302 B.R. 357 (Bankr.N.D.Ohio 2003).

■ First, from an overall perspective, all three grounds to some extent rely on the Defendant having caused its representatives, in the time period immediately following his bankruptcy filing, to both visit the Debtor's property and then to make repeated contacts with his household regarding the repayment of its debt. However, this conduct, while not exactly advisable and fraught with risks, is not sanctionable in this particular matter. The key here is that the events occurred predischarge, thus implicating the automatic stay of § 362(a), not the discharge injunction of § 524(a) as raised in the Debtor's complaint; which although not fatal from a procedural standpoint, raises a viable defense for the Defendant's actions.

■ Like the discharge injunction, the automatic stay generally enjoins a creditor from taking any action to collect on its debt, including making contact with debtor. Exceptions exist; and in *Pertuso v. Ford Motor Credit Co.*, the Sixth Circuit Court of Appeals held that one such exception is implicitly found in paragraph (c) of § 524, regarding the reaffirmation of a debt. 233 F.3d 417, 423 (6th Cir.2000). That is, actions taken by a creditor regarding a debtor's potential reaffirmation of its debts do not violate the automatic stay of § 362(a). Thus, as noted in *Pertuso*, a creditor, in pursuit of a reaffirmation agreement, may contact a debtor without violating the stay so long as such contact is not overreaching.

In giving effect to the Sixth Circuit's decision in *Pertuso v. Ford Motor Credit Co.*, the facts in this case show that, in his bankruptcy petition, the Debtor set forth his intention to reaffirm on his debt with the Defendant. And although this statement is not binding,[1] nothing of any evi-

---

1. *In re Kasper*, 309 B.R. 82 (Bankr.D.Dist.Col. 2004); *In re Logan*, 124 B.R. 729 (Bankr. S.D.Ohio 1991).

dentiary weight was subsequently presented to the Court to show that the Debtor attempted to timely refute his statement of reaffirmation. Conversely, once it finally became clear that the Debtor did not intend to enter into a reaffirmation agreement, the evidence shows that the Defendant's contact with the Debtor on the reaffirmation matter ceased. Thus, what evidence is available supports the view that, in contacting the Debtor, the Defendant was simply attempting to implement the Debtor's statement of his intent to reaffirm. Hence, while there are shades of overreaching, the Court cannot find that the Defendant's predischarge actions are sanctionable. Bearing this in mind then, the Court now turns to address those individual grounds raised by the Debtor to support an award of direct damages.

█ As direct damages, the Defendant first seeks reimbursement for those legal fees already paid to a former attorney and which were incurred to have the Defendant cease its collection efforts. Yet, as best as this Court can tell, much of this work appears to surround those actions taken by the Defendant to implement the Debtor's intention to reaffirm on its debt, making such fees noncompensable for the reasons just explained. Regardless, no supporting evidence—e.g., a fee statement—was presented by the Debtor showing the extent of such legal fees or, for that matter, whether such fees were actually paid. As such, regardless of when and why such fees were incurred, the Court, having no evidence on which to base an award, must deny the Debtor any recovery for his earlier legal expenses.

On his claim for emotional distress, the Debtor relied heavily on the effect the Defendant's actions had on his wife. Yet again, much of the conduct complained of appears to have taken place prior in time to his discharge, and thus like his claim for the reimbursement of legal fees, is noncompensable. Even if not the case, two barriers still exist in making an award for emotional distress.

First, while this Court has permitted the recovery of damages for emotional distress for a creditor's violation of the discharge injunction, such damages are, by their very nature, speculative. And therefore, this Court has required that there must exist some discernable level of corroborating evidence to support such an award. *In re Perviz*, 302 B.R. 357 (Bankr.N.D.Ohio 2003). Though here, no such corroborating was presented; the only evidence before the Court is the self-serving testimony of the Debtor and his wife. Second, the Debtor's wife—acknowledgedly, the party most heavily effected by the Defendant's actions—is not before this Court. As a consequence, there is no jurisdictional basis upon which to make an award for any emotional distress that may have befallen her. Accordingly, for all these reasons, the Debtor's claim of damages for emotional distress must be denied.

█ As for those damages relating to lost wages, it is the Debtor's position that he missed 12 to 15 days of work because of the Defendant's misconduct. However, the evidence shows that many of these missed days of work, again, stem from events that transpired predischarge; and therefore, cannot be allowed for the reasons already explained. And, while exact figures could not be determined with any certainty, a review of a fee statement provided by the Debtor's current attorney, shows that, at most, the Debtor needed to miss three days of work, inclusive of one day to attend the Trial, to address the Defendant's conduct. As such, based upon his uncontroverted testimony that he earns $14.00 dollars per hour, the Debtor is enti-

tled to an award of $336.00 in compensatory damages for his lost wages.

Ending now the matter of direct damages, the Debtor has also requested remuneration for those legal fees incurred by his current legal counsel in prosecuting this action against the Defendant. On this matter, Debtor's legal counsel presented to the Court an itemized statement showing $3,150.00 in incurred fees, charged at the rate of $150.00 per hour. Upon reviewing these fees, the Court finds that, given the Defendant's blatant violation of the discharge injunction in conjuncture with the drawn out nature of this matter, such fees were both reasonable and necessary, subject to this one exception: Prior to bringing this matter before the Court, those fees incurred by Debtor's legal counsel, in a continuing attempt to resolve the matter, but after the Defendant had declined her original offer of settlement, were not necessary, and therefore cannot be allowed. Stated a different way, once the Defendant had declined to accept the Debtor's original offer to settle the matter without litigation, the Debtor's option was to commence legal action, not to continue to attempt to stave off litigation. In this regard, upon reviewing the fee statement placed into evidence, the Court finds that two hours were unnecessary. Accordingly, the Debtor's legal fees will be reduced by $300.00, leaving a total of $2,850.00 as allowable fees.

■ Finally, the Debtor has also asked that he be awarded punitive damages for the Defendant's violation of the discharge injunction. In *In re Perviz*, this Court explained the propriety of awarding punitive damages in the context of a § 524(a) violation as follows:

Unlike compensatory damages, punitive damages serve the same purpose as criminal penalties: to punish a party for their wrongful conduct and to deter further conduct of that same nature. In situations where this policy function would be furthered, most court decisions have held, and this Court subscribes to the legal tenet that bankruptcy courts have the inherent power to punish parties for their contemptuous violation of the discharge injunction through the imposition of punitive damages. The reasoning [is that] this Court does not believe that Congress would enact § 524 and not empower bankruptcy courts to dissuade invidious creditors from conduct violative of a clear congressional prohibition. To do so would be nothing more than an exercise in legislative futility.

However, as in any case, punitive damages are only appropriate where there is some sort of nefarious or otherwise malevolent conduct. Thus, in situations involving a violation of the discharge injunction, punitive damages have been properly limited to circumstances where there exists a complete and utter disrespect for the bankruptcy laws. In line therewith, this Court has always exercised great restraint in awarding punitive damages.

302 B.R. 357, 373 (Bankr.N.D.Ohio 2003) (internal quotations and citations omitted). Under this reasoning, the Defendant's conduct simply does not rise to a level which would warrant an award of punitive damages. Central to this decision is that the Defendant, without needless delay, voluntarily dismissed its action to recover deficiency damages from the Debtor in his personal capacity.

In summation, the Court finds that the Debtor is entitled to $336.00 in compensatory damages, and that the Debtor's attorney is entitled to $2,850.00 in legal fees. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel,

regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that as against the Defendant, GreenPoint Credit, the Debtor, Brian Chambers, is hereby awarded Three Hundred Thirty-six dollars ($336.00) in compensatory damages; and that Attorney for the Debtor, Melan Forcht, is hereby awarded Two Thousand Eight Hundred Fifty dollars ($2,850.00) in legal fees. Such compensation shall be paid by the Defendant within 21 days, commencing from the date of the entry of this Order.

It is **FURTHER ORDERED** that, pursuant to Bankruptcy Rule 9021, the Clerk, United States Bankruptcy Court, enter judgment consistent with the above order.