Jeffery P. Hopkins, United States Bankruptcy Judge
In September 2009, Debtors David Lee and Betsy Thurman Haltermon (the "Debtors" or referred to singularly as the "Debtor" when discussing Debtor David Haltermon) filed a Chapter 7 petition seeking protection from their creditors (Doc. 1). They obtained a discharge on January 12, 2010, which resulted in all prepetition debts owed to their creditors, whether they were scheduled or not, being discharged (Doc. 14). Years later, one of the creditors holding a prepetition unsecured claim against the Debtors, Dr. Lawrence Kurtzman ("Kurtzman"), filed a pro se action in state court seeking to collect on the debt. Debtors have filed the present Motion for Contempt (the "Motion for Contempt") (Doc. 19) seeking to enforce the discharge injunction and an order requiring Kurtzman to pay them monetary damages for having violated the discharge order. See 11 U.S.C. § 105(a) ; 11 U.S.C. § 524(a)(2), and 11 U.S.C. § 727. Complicating matters further, Debtors and Kurtzman had been in business together and co-debtors on certain business debt prior to the bankruptcy. After the bankruptcy, Debtors and Kurtzman continued to maintain a relationship and financial ties.
*314 Kurtzman filed a Response (Doc. 23) denying that he violated § 524(a)(2). At first, Kurtzman claimed that he was unaware that the debt had been discharged in bankruptcy. In the alternative, Kurtzman asserted that he had been clueless about Debtors' bankruptcy altogether. Debtors filed a Reply challenging Kurtzman's asserted lack of knowledge about the bankruptcy or discharge of the debt (Doc. 26). The Court held an evidentiary hearing on May 9, 2017. After which, Debtors filed a Post-Hearing Brief (Doc. 34) and Kurtzman filed a Post-Hearing Memorandum (Doc. 33) and Response to the Post-Hearing Brief (Doc. 35).
JURISDICTION
The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference entered in this District. Pursuant to 28 U.S.C. § 157(b)(A) and (O), this is a core proceeding in which the Court possesses the authority to enter final judgment. This memorandum constitutes this Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.
FINDINGS OF FACTS
On September 24, 2009, Debtors filed a joint petition seeking relief from their creditors under Chapter 7. (Doc. 1). The petition stated that Mrs. Haltermon owed a creditor identified as Kurtzman on a debt of $10,000 for a personal loan. See Doc. 1, Schedule F. The purpose for the personal loan was not disclosed on the record. The Schedule also listed Kurtzman, and an individual named, Tome Kurtzman, presumably one of his relatives, and JJM Property Management, LLC, as co-debtors on a different obligation owed to McCormick 101, LLC. See Doc. 1, Schedule H. On January 12, 2010, Debtors received a discharge of all their prepetition obligations under 11 U.S.C. § 727 (the "Discharge Order"). (Doc. 14). On January 15, 2010, the Discharge Order was sent via first class mail to all creditors listed in the creditor matrix, including Kurtzman at his address located at 7439 E. Aracoma Drive, Cincinnati, Ohio 45237-2325. (Doc. 15).
On November 3, 2015, almost six years after the Discharge Order, Kurtzman's non-bankruptcy attorney, Matthew J. Hammer, an associate with the Deters Law Firm, who claims that he was unaware of Debtors' bankruptcy, emailed a letter to Debtor David Haltermon seeking to collect an "obligation on [an] agreement" on behalf of Kurtzman.[1] See Doc. 19, Exhibit A. The letter provided Debtors with an ultimatum and reads as follows: "You have until next Monday to contact Dr. Kurtzman and make arrangements to resolve your obligation on your agreement. It is shameful what you have done. It is inexcusable you have ignored him. If you do not reach him to resolve, we not only sue you [sic], we publicly humiliate you [sic] by any means necessary, including social media/news. I don't bluff. Contact him. If not, so be it." (Emphasis in original). The letter did not provide any details regarding the nature of the obligation or the date the debt was incurred. Not surprisingly, *315 the Debtors and Kurtzman never reached any resolution.
On January 14, 2016, Kurtzman filed a pro se complaint against Debtor David Haltermon in the Court of Common Pleas for Hamilton County (the "state court action"). Case No. A1600231. The complaint was filed just two months after Debtor received attorney Hammer's threatening email and letter. In the state court action, Kurtzman alleged that he had loaned Debtor $20,000 and that Debtor defaulted entirely on repayment. See Doc. 19, Exhibit B. Paragraph 6 of the state court complaint refers to a check Kurtzman purportedly wrote to Debtor evidencing the $20,000 loan. See Doc. 28-5. However, the state court complaint did not attach a copy of the check, nor did it disclose the date when the loan was made by Kurtzman or any of its terms or conditions.
On September 30, 2016, Debtor's attorney, who also represents him in the bankruptcy case, filed a notice of appearance in the state court action. (Doc. 30-4). In the answer to the state court complaint, Debtor's attorney asserted several affirmative defenses. See Doc. 19, Exhibit C. Debtor's tenth defense, in particular, states, "Kurtzman is barred from bringing this action by order of a court of competent jurisdiction." Id. None of the affirmative defenses contained specific language that the state court action was barred by the bankruptcy discharge.[2] See Ohio R. Civ. P. 8(c).
Three months later, on January 24, 2017, the state court conducted a scheduling conference. See Docs. 30-6 and 32. Both attorneys appeared at the conference on behalf of their respective clients.[3] On that same day, attorney Hammer served Plaintiff's Answers to Defendant's First Set of Interrogatories, Request for Production of Documents, and Request for Admission to Plaintiff Lawrence C. Kurtzman M.D. (Doc. 28-8) upon Debtor's counsel in the state court action. In that discovery request, Debtor's counsel had asked for a copy of Kurtzman's $20,000 check referred to in Paragraph 6 in the state court complaint. See Doc. 19. According to Kurtzman, he was unable to locate a copy of the check but stated it was drawn on a Fifth Third Bank account. Id. However, on March 11, 2017, after Debtor's attorney subpoenaed Fifth Third Bank's records, he discovered that Kurtzman's last account at the bank had been closed in 2008-well before Debtors' Chapter 7 bankruptcy filing on September, 24, 2009-making the debt alleged in the state court action a prepetition obligation subject to the Discharge Order. See Doc. 28-11.
On March 13, 2017, immediately upon learning of the discharge, attorney Hammer filed a Notice of Voluntary Dismissal and Kurtzman's state court action was later dismissed with prejudice. See Doc. 32. On that same day, Debtors filed the Motion for Contempt currently before this Court. At the hearing held on the Motion, the parties filed a Stipulation of Facts. (Doc. 32). Importantly, Paragraph 12 of the Joint Stipulation of Facts states: "The loan that was the subject of Case No. A1600231 [the state court action] was *316 made by Dr. Kurtzman to Debtor prior to September 24, 2009." Id. However, Kurtzman testified in an affidavit that he had "no recollection of ever receiving [the Discharge Order]" related to Debtors' Chapter 7 bankruptcy petition. See Affidavit attached to Response in Opposition of the Motion for Contempt (Doc. 23-1). Yet, evidence introduced at trial showed that the Discharge Order was mailed to Kurtzman's residence by the Bankruptcy Noticing Center on January 15, 2010. (Doc. 28-2). Moreover, evidence also revealed that Kurtzman had been a co-defendant with Debtor in another state court action McCormick 101, LLC v. JJM Property Management, LLC, et al. (Case No. AO901737). See Docs. 28-3 and 28-4. In that litigation, Kurtzman along with the other co-defendants were served on October 5, 2009 with a suggestion of bankruptcy by the plaintiffs informing them of Debtor's September 24, 2009 Chapter 7 petition. (Doc. 28-3).
CONCLUSIONS OF LAW
A. Kurtzman violated the discharge injunction.
Under § 727(b), a debtor is discharged "from all debts that arose before the date of the order for relief under this chapter."[4] Further, § 524(a)(2) provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor, whether or not such debt is waived."[5] Section 524 does not include a mechanism that allows for a private right of action to enforce the discharge injunction. See Pertuso v. Ford Motor Credit Co. , 233 F.3d 417, 423 (6th Cir. 2000). Rather, "a debtor's only recourse for violation of the discharge injunction is to request that the offending party be held in contempt of court." In re Gunter , 389 B.R. 67, 71 (Bankr. S.D. Ohio 2008). A court may award damages and attorney fees to the debtor if contempt is present. Id. ; see also TWM Mfg. Co. v. Dura Corp. , 722 F.2d 1261, 1273 (6th Cir. 1983) ("The award of attorney's fees and expenses to a successful movant may be appropriate in a civil contempt proceeding."); In re Duling , 360 B.R. 643, 645 (Bankr. N.D. Ohio 2006) ("The sanctions imposed by a court may include an award of damages to the debtor, including reasonable attorney fees.").
In order to prevail in a civil contempt proceeding, a debtor must demonstrate that the defendant: "(i) violated the discharge injunction (and thus the order granting discharge) and (ii) did so with knowledge that the injunction was in place." In re Gunter , 389 B.R. at 72. Further, "the [debtor] bears the burden of proving both elements-violation and knowledge-by clear and convincing evidence." Id. In the Sixth Circuit, a debtor must demonstrate that the creditor had actual knowledge of the injunction. The mailbox rule provides that actual knowledge may be imputed onto the intended recipient under certain circumstances. Under that rule, "a presumption of receipt arises upon proof that the item was addressed properly, had sufficient postage, and was deposited in the mail." Id. at n. 6, quoting In re Yoder , 758 F.2d 1114, 1118 (6th Cir. 1985).
In this case, Debtors have demonstrated that Kurtzman violated the discharge injunction. In the Joint Stipulation of Facts (Doc. 32), the parties stated that the "loan that was the subject of Case No. A1600231 [the state court action] was made by *317 Kurtzman to Debtor prior to [the petition date]." Under the circumstances, Kurtzman's loan to Debtor was discharged in the bankruptcy case. A discharge from bankruptcy "discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before commencement of the case[.]" § 727(b). When Kurtzman initiated the pro se state court action in an attempt to collect on the loan, a prepetition debt, his conduct fell within the ambit of § 524(a)(2). Thus, the Court holds that Debtors have established, by clear and convincing evidence, that Kurtzman violated the discharge injunction.
B. Kurtzman violated the Discharge Order with knowledge that the injunction was in place.
Next, the Court must determine whether Debtors have proven that when Kurtzman filed the state court action seeking to collect the debt in January 2016, he had actual knowledge of the Discharge Order entered in January 2010. To prevail on this element, Debtors must demonstrate by clear and convincing evidence that Kurtzman not only violated the discharge injunction (or order granting discharge), but also that he did so with knowledge that the injunction was in place. See In re Gunter , 389 B.R. at 71.
Under the facts presented, the Court concludes that Kurtzman had actual knowledge of Debtor's discharge. As noted, "a presumption of receipt [of a mailing] arises upon proof that the item was addressed properly, had sufficient postage, and was deposited in the mail." In re Gunter , 389 B.R. at 72 n. 6, quoting In re Yoder , 758 F.2d 1114, 1118 (6th Cir. 1985). The evidence adduced at the May 9, 2017 hearing clearly showed that on January 15, 2010, the Discharge Order was served by first class mail on the creditor matrix, including Lawrence C. Kurtzman and Lawrence Kurtzman at the following address: 7439 E Aracoma Drive, Cincinnati, OH 45237-2325. See Doc. 15. At trial, Kurtzman admitted that he had lived at that address during all relevant periods before and after Debtors' bankruptcy case was filed. None of the testimony or evidence presented at the hearing demonstrated that notice of Debtors' discharge failed to arrive at Kurtzman's residence or that the notice had been returned to sender undeliverable. Kurtzman's statement in his affidavit that he had no recollection of receiving the Discharge Order is not enough to overcome the presumption presented by the mailbox rule. See In re Yoder , 758 F.2d 1114, 1118 (6th Cir. 1985) ("The common law has long recognized that an item properly mailed was received by the addressee."); Fed. R. Evid. 301 ("[T]he party against whom a presumption is directed has the burden of producing evidence to rebut the presumption."). Consequently, the Court finds that a presumption of receipt of the discharge notice arises under the mailbox rule and that the addressee, Kurtzman, received a copy of the Discharge Order.
Additional evidence presented at trial also compels the Court towards this conclusion. Kurtzman testified that he had assisted Debtors with their personal finances, including paying the couple's bills, lending them a cell phone to use and directing money from the couple's bank account which Kurtzman had been given access to in order to pay on a car loan for a vehicle Kurtzman had sold to them. See Doc. 23-1. Apparently, Debtors financial ties to Kurtzman which began before the *318 bankruptcy continued afterwards.[6] Kurtzman did not dispute Debtor's account of those facts.
Other evidence also clearly points to Kurtzman having had notice of Debtor's bankruptcy filing prior to the mailing of the Discharge Order on January 15, 2010. Debtor testified credibly that he discussed filing bankruptcy with Kurtzman after discovering that he might also be found personally liable in the McCormick 101, LLC vs. JJM Property Management, LLC, et al. (Case No. A0901737) (see Docs. 28-3 and 28-4) litigation where the two had been co-defendants together. Indeed, the evidence reveals that on October 5, 2009, the plaintiffs in the McCormick 101, LLC v. JJM Property Management, LLC, et al. litigation served Kurtzman, as one of the co-defendants, with a suggestion of bankruptcy which had a copy of Debtor's bankruptcy notice conspicuously attached. See Doc. 28-3. The notice informed all the parties in that litigation that Debtors had sought bankruptcy protection and would, therefore, be dismissed from the lawsuit. Id. That lawsuit ended in judgment being granted against Kurtzman and the other co-defendants in the amount of $845,726.24. See Doc. 28-4. The filing of the suggestion of bankruptcy and the subsequent mailing of the Discharge Order to Kurtzman's home offer compelling proof. From the totality of events, the Court finds that Kurtzman had actual knowledge of Debtor's bankruptcy filing as early as October 5, 2009, and certainly not later than January 15, 2010.
To counter the evidence that he had received notice of the bankruptcy, Kurtzman first contends that the $20,000 debt was not discharged because it was not accurately listed in Debtors' schedules. See Doc. 23. Debtors listed the debt to Kurtzman in Schedule F as an unsecured claim for only $10,000 on a personal loan. (Doc. 30-1). Kurtzman further argues that, even if the debt was discharged, he did not have actual knowledge of the discharge until March 13, 2017, when the Motion for Contempt was filed. See Doc. 23. In addition, Kurtzman contends that a § 524(a)(2) violation requires a showing that he actually knew he was attempting to collect a discharged debt. Id. Finally, Kurtzman argues that if the Court does find him in contempt, he objects to the amount of attorney fees that Debtors have requested on the grounds that it would constitute a windfall. See Doc. 35.
In In re Madaj , 149 F.3d 467, 469 (6th Cir. 1998), the Sixth Circuit held that "a discharge under 11 U.S.C. § 727 discharges every prepetition debt, without regard to whether a proof of claim has been filed, unless that debt is specifically excepted from discharge under 11 U.S.C. § 523." In In re Madaj , the creditors argued *319 that because the debtors failed to inform them of the bankruptcy or list their claim in the schedules, the debt in question was not discharged. In rejecting that argument, the Sixth Circuit reasoned: "Even if, as we shall assume for the sake of argument, the Debtors purposely failed to list the debt in an attempt to defraud the Creditors, this action did not (and could not) work some perverse alchemy to change the innocent loan into a fraudulent debt of the type that is covered by § 523(a)(2), (4) or (6) and therefore excepted from discharge pursuant to § 523(a)(3)(A)." Id. at 471.
The complaint filed in state court avers that Kurtzman was seeking to collect an "obligation on [an] agreement." See Doc. 19, Exhibit A. Nothing in the complaint suggests that the loan at issue was a fraudulently incurred debt. As such, the debt was not of the type covered by § 523(a)(2), (4) or (6) and therefore was not excepted from discharge. Thus, under In re Madaj , Kurtzman's argument that his unscheduled $20,000 debt was not discharged in Debtors' Chapter 7 bankruptcy case is without merit.
The Court also rejects Kurtzman's plausible deniability defense. As noted, Kurtzman was seeking in the state court to collect on an "obligation on [an] agreement," minimally satisfying the requirement of a short and plain statement showing entitlement to relief. Yet, during discovery in the state court action and with assistance from attorney Hammer who prepared his responses, Kurtzman refused to provide basic details about the debt. When Debtor's attorney propounded questions in discovery seeking documents related to the debt, none of the responses were very helpful or particularly informative. Indeed, Plaintiff's Answers to Defendant's First Set of Interrogatories, Request for Production of Documents, and Request for Admission to Plaintiff Lawrence C. Kurtzman M.D., which were prepared by attorney Hammer, do not offer any clue about the nature of the debt, or more importantly, the timing of when the debt arose. Virtually all of Kurtzman's answers to discovery refer to a string of emails attached to Plaintiff's Answers to Interrogatories, none of which express the terms of a contract or agreement or give a basic description of when the debt was incurred. In all, most of the responses to discovery contain language similar to Kurtzman's answers to Document Request No. 8. In that request, Kurtzman had been asked to produce a copy of the check allegedly paid to Debtors. In response, Kurtzman ambiguously states: "Plaintiff is conducting a reasonable and diligent search of those files that are reasonably expected to contain the requested information. To the extent that the Requests purport to require more, Plaintiffs object to the Requests on the grounds that compliance would impose an undue burden or expense." See Doc. 28-8.
The Court concludes that Kurtzman's feigned ignorance about the nature of the debt and when it arose strains credulity.[7] Juxtaposed against Kurtzman's *320 contention that he did not have actual knowledge of the Discharge Order until March 13, 2017, when the Motion for Contempt was filed, the evidence clearly reveals that Kurtzman received notice of Debtor's bankruptcy filing as early as October 5, 2009, while being sued as a co-defendant with Debtor in the McCormick 101, LLC v. JJM Property Management, LLC, et al. litigation and, again, around January 15, 2010, when the Discharge Order was mailed to his residence by the Bankruptcy Noticing Center. See Case No. A0901737; see also Docs. 28-3 and 28-4.
Based on the totality of circumstances, Debtors have demonstrated by clear and convincing evidence that Kurtzman had actual knowledge of the order of relief. See In re Zilog, Inc. , 450 F.3d 996, 1007 (9th Cir. 2006) (holding that "knowledge of the [discharge] injunction is a question of fact that can normally be resolved only after an evidentiary hearing."). The Court concludes also that Kurtzman violated the Discharge Order with actual knowledge that the injunction was in place. Thus, Kurtzman's attempts to collect the discharged debt violated § 524(a)(2), and was contemptuous in nature.[8]
C. Remedy
Having found that Kurtzman violated the discharge injunction, the Court must next determine whether to grant Debtor's request for an award damages, including attorney fees and punitive damages as a sanction under 11 U.S.C. § 105(a). See In re Miller , 282 F.3d 874 (6th Cir. 2002). In a recent case, In re Mitchell , 545 B.R. 209 (Bankr. N.D. Ohio 2016), Judge Arthur Harris summarized in very clear expression the applicable law:
"If contempt is established, the injured party may be able to recover damages as a sanction for the contempt." In re Caravona , 347 B.R. 259, 267 (Bankr. N.D. Ohio 2006) (citing Chambers v. Greenpoint Credit (In re Chambers) , 324 B.R. 326, 329 (Bankr. N.D. Ohio 2005) ). Additionally, the Court may award "attorney fees to an debtor injured by a contemptible violation of the discharge injunction." In re Chambers , 324 B.R. at 329-30 (discussing Miller v. Chateau Communities, Inc. (In re Miller) , 282 F.3d 874 (6th Cir. 2002) ). Generally, damages in contempt proceedings are meant to vindicate the affront to a court order, and not compensate private harm, but "[t]he modern trend in civil contempt proceedings is for courts to award actual damages for violations of § 524's discharge injunction, and, where necessary to effectuate the purposes of the discharge injunction, a debtor may be entitled to reasonable attorney fees." Lassiter v. Moser (In re Moser) , Nos. 09-8067, 09-8068, 464 B.R. 61, 2010 WL 4721239, *5 (6th Cir. BAP Nov. 23, 2010) (quoting *321 Miles v. Clarke (In re Miles) , 357 B.R. 446, 450 (Bankr. W.D. Ky. 2006) ). However, as with damages for violations of the automatic stay, debtors have a duty to mitigate damages when faced with violations of the discharge injunction, and the debtor must establish that any attorney fees are reasonable. Not only does Bankruptcy Rule 9011 prohibit actions brought for "any improper purpose, such as ... to cause unnecessary delay or needless increase in the cost of litigation[,]" but it is inherently improper for debtors "to view violations [of the discharge injunction] as a profit-making endeavor." Duling , 360 B.R. at 645-47 (discussing reasonableness of attorney fees and debtor's duty to mitigate damages for violations of the discharge injunction). An award of damages for a violation of the discharge injunction is within the Court's discretion. In re Perviz , 302 B.R. 357, 370 (Bankr. N.D. Ohio 2003).
In re Mitchell , 545 B.R. at 226-27.
Before a bankruptcy court may award a debtor damages for a creditor's violation of the discharge injunction, actual evidence of loss must be presented. In re Mayer , 254 B.R. 396, 398 (Bankr. N.D. Ohio 2000). A debtor must prove his injury by a preponderance of the evidence. In re McCool , 446 B.R. 819, 823-24 (Bankr. N.D. Ohio 2010). The debtor must support his claim of actual injury by establishing "adequate proof" and cannot rely on speculation. Id. at 824, quoting Archer v. Macomb Cnty. Bank , 853 F.2d 497, 499-500 (6th Cir. 1988).
1. Punitive Damages
Bankruptcy courts rarely award punitive damages for violations of the discharge injunction. These are appropriate only "where there is some sort of nefarious or otherwise malevolent conduct." In re Perviz , 302 B.R. 357, 372 (Bankr. N.D. Ohio 2003). Normally, punitive damages are awarded when a creditor who has violated the discharge injunction has demonstrated "a complete and utter disrespect for the bankruptcy laws." Id. at 372. Based on the evidence presented in this case, the Court does not believe that punitive damages are warranted.
2. Attorney Fees
Debtors have asked the Court for an award of attorney fees totaling $5,000. (Doc 34).[9] The attorney fees request covers legal services provided in the state court and bankruptcy court proceedings. Attached to Debtor's Post Hearing Brief are time records showing services provided by four attorneys and one paralegal associated with the law firm Minnillo & Jenkins Co., covering the periods between September 22, 2016, and May 9, 2017. Id.
Citing In re Duling , 360 B.R. 643, 647 (Bankr. N.D. Ohio 2006), Kurtzman contends that Debtor may only obtain attorney fees such that they are reasonable and not a "profit making endeavor." According to Kurtzman's counsel, "All the time and expense could have easily been avoided by debtor's attorney promptly sent [sic] a fax, text message, email, or made a phone call to Mr. Hammer advising that the debt that was the subject of the state court action was probably discharged." (Doc. 35). Kurtzman contends that, if attorney fees are awarded, the Court should limit the fees to only $450 and deny Debtor's request *322 for damages altogether for lost wages or travel expenses.
Based on Debtor's attorney's itemization of attorney fees, counsel contends that he did not have actual knowledge that the loan Kurtzman had been pursuing in state court was a prepetition obligation until, March 11, 2017. That was also the date when Debtor's counsel began drafting the Motion for Contempt. See Doc. 34. However, it is beyond peradventure to conclude that Debtor's attorney had an inkling as early as October 27, 2016 that Kurtzman's state court action was barred by the discharge injunction.
Debtor's answer to Kurtzman's complaint, filed on October 27, 2016, certainly foretold his attorney's well-founded suspicion. As noted, Debtor's attorney asserted an affirmative defense contending that "Plaintiff is barred from bringing this action by order of a court of competent jurisdiction." That Debtor's counsel did not utter the exact language contained in Ohio Civ. R. 8(c) to express that the debt had actually been "discharg[ed] in bankruptcy" is of no moment. The Court believes based on the record established in this case that Debtor's counsel's use of inexact language to assert the affirmative defense was, at best, an attempt to have it avoid detection by attorney Hammer (a relatively new lawyer inexperienced in bankruptcy practice) and, at worst, an attempt to provide cover for Debtor's attorney to be able to make a colorable claim that Kurtzman had been put on notice of the bankruptcy but opted instead to continue violating the discharge injunction. Whatever Debtor's attorney's motivation for withholding information that the debt might have been discharged in Debtors' bankruptcy, he had a duty to mitigate damages which meant that he should have immediately alerted attorney Hammer with the suggestion of bankruptcy on October 27, 2016, or perhaps, on January 24, 2017, at the scheduling conference in state court which attorney Hammer also attended.
Rather than explicitly raise the bankruptcy discharge affirmative defense in the state court action early, Debtor's counsel continued to litigate for another five months after October 2016. Had the suggestion of bankruptcy been promptly communicated, attorney Hammer would have had, at a minimum, a duty to investigate the matter.[10] Precious judicial resources in *323 the state court might also have been preserved, not to mention the savings of attorney fees and reduction of stress to Debtor that could have resulted.
Under the circumstances, Debtor's attorney's contention that he failed to realize until March 11, 2017 that the state court litigation was over an obligation that had been incurred prepetition seems implausible. More surprising, however, is the fact that Debtor's attorney, according to the time records, immediately began drafting the Motion for Contempt upon discovering that the debt had been incurred prepetition. See Doc. 34. It appears from all the statements and actions exhibited by counsel in this case, that a compelling reason for Debtor's attorney's decision to withhold the suggestion of bankruptcy in October 2016 in the Answer, and again, at the January 2017 status conference in the state court action, was his desire to maximize the recovery of damages and attorney fees rather than take additional steps needed extrajudicially to resolve the violation of the discharge injunction in a non-litigious manner.[11]
Were these the only facts under consideration, the Court might very well deny Debtor's request for attorney fees incurred beyond October 27, 2016, or certainly those incurred after the January 24, 2017 status conference. However, because of the conduct exhibited by attorney Hammer in the state court litigation is inextricably linked to and, in large part, gave rise to the need to file the Motion for Contempt, the Court concludes that Debtors are entitled to attorney fees up to and including March 10, 2017.
Paragraph 6 of the Joint Stipulation of Facts (Doc. 32) states, in part, that "Matthew J. Hammer and The Deters Law Firm, P.S.C. noticed their entry of appearance as counsel for plaintiff in [the state court action Case No. A1600231] on March 25, 2016." However, the record clearly reflects that attorney Hammer began representing Kurtzman in the state court action sometime before January 24, 2016. Attorney Hammer signed the certificate of service on January 24, 2016 to Plaintiff's Answers to Defendant's First Set of Interrogatories, Request for Production of Documents, and Request for Admission to Plaintiff Lawrence C. Kurtzman M.D. - just fourteen days after the state court action was filed on January 10, 2016. See Doc. 28-8. Thus, it is clear that Kurtzman was being assisted and receiving legal advice from attorney Hammer within days of his filing the pro se complaint, if not before. In fact, the evidence certainly suggests that attorney Hammer began representing Kurtzman in connection with the state court action well before January 24, 2017 based on the date of the November 3, 2015 letter he emailed to Debtor threatening him with a lawsuit.
*324 The Court concludes that proper steps were not taken by Debtor's counsel to mitigate damages. On the other hand, however, Debtor's counsel should not have been forced to find out after months of discovery that the debt at the center of the dispute in the state court litigation was a prepetition obligation subject to the January 12, 2010 Discharge Order. Some attorney fees against Kurtzman are warranted in light of his absolute disregard of the discharge injunction with knowledge of the bankruptcy, but not in the amount requested by Debtor's counsel. Even though Debtor's attorney has reduced the request for attorney fees from $9,395 to $5,000, the Court fails to see how the entire $5,000 prayed for in the Motion as amended is reasonable. The vast majority of the billing records consist of two categories: (1) client meetings, preparing the answer and discovery, attending proceedings and communicating with attorney Hammer in connection with the state court action conducted between September 22, 2016 and March 10, 2017; and (2) communicating with attorney Hammer in connection with the Motion for Contempt, researching, drafting, and revising the Motion for Contempt and related pleadings and preparing exhibits, witnesses and attending the hearing. See Doc. 34.
As far as the state court litigation is concerned, the Court finds that only the attorney fees up to and including March 10, 2017 were reasonably incurred. It was unreasonable for Debtor's attorney to immediately begin drafting the Motion for Contempt on March 11, 2017-the day after discovering Kurtzman's state court lawsuit had been over a prepetition obligation. Within days of receiving notice of the discharge, on March 13, 2017, Kurtzman's attorney promptly dismissed the state court action. Debtor's attorney afforded no time to take measure of the situation, mitigate damages, and see if a settlement could be reached. Under the circumstances, the Court will limit the fees awarded to the reasonable value of services provided in the state court litigation and those legal services that should have been sufficient to resolve this matter before the Motion for Contempt was filed.
Debtor's counsel expended a total of 15 hours (13.7 by attorneys and 1.3 by a paralegal) defending the lawsuit in the state court litigation. The Court deems that an appropriate and reasonable billing rate for experienced bankruptcy attorneys in this area is $250 per hour; an appropriate and reasonable billing rate for experienced paralegals in this area is $100 per hour. Multiplying these rates by the number of hours Debtor's attorney and paralegals spent working on the state court litigation, the Court finds $3,555.00 is a reasonable attorney fee award. However, the attorney fees will also be reduced by $225 for a charge representing a "status and strategy" interoffice meeting between two of Debtor's attorneys that occurred on September 22, 2016. As for the attorney fees incurred after March 10, 2017, the Court will award Debtors an additional $125 for the drafting of the Stipulation of Facts. Thus, the total amount of attorney fees awarded against Kurtzman for his contemptible conduct is $3,455.00.
3. Actual Damages
Debtor testified that he missed three total days as a result of defending against the state court action and the subsequent bankruptcy Motion. He further stated that he was paid $35 per hour for eight hours and $55 per hour for sixteen hours. Debtor failed to offer into evidence any earning statements or pay stubs, corroborating his claims of lost wages. Nor was evidence introduced showing that Debtor was forced to use vacation days, *325 sick leave or personal days without pay in order to attend court proceedings. Because Debtor failed to meet his burden of establishing actual injury by adequate proof, Debtor's request for payment of lost wages will be denied as speculative. See, e.g. , In re Bolen , 295 B.R. 803, 810-11 (Bankr. D. S.C. 2002).
CONCLUSION
Based on the foregoing, the Court finds that the creditor, Dr. Lawrence Kurtzman, violated the discharge injunction and did so with knowledge that it was in place. It is ORDERED that Dr. Lawrence Kurtzman pay Debtors a total of $3,455.00. The Motion for Contempt (Doc. 19) is hereby GRANTED . All other damages, compensatory, punitive or otherwise requested by the Debtors are DENIED .
IT IS SO ORDERED .

Matthew J. Hammer and the Deters Law Firm represented Kurtzman in the state court action. Kurtzman's attorney, Hammer and the Deters Law Firm are represented by different counsel in connection with the Motion for Contempt. At the hearing held on May 9, 2017, this Court orally ruled from the bench that, based on the evidence presented, attorney Hammer and his firm would not be sanctioned for violating the discharge injunction as prescribed by § 524(a)(2). However, the Court also expressed its displeasure with the conduct exhibited by attorney Hammer, a matter which will be dealt with more thoroughly later in this opinion.

According to Debtor's attorney, at the time he filed the Answer, neither he nor Debtor knew the origin or details of the Kurtzman loan being prosecuted in the state court action. Debtor contends that as far as he knew the loan could have been for a prepetition debt-in which case it would have been discharged in the bankruptcy-or for a new debt incurred postpetition.

Attorney Hammer's signatures appearing on the Affidavit attached to Response in Opposition to the Motion for Contempt (Doc. 23-2) and the Scheduling Order (Doc. 30-6) are identical, indicating that he attended the scheduling conference in the state court along with Debtor's attorney.

See 11 U.S.C. § 727(b).

See 11 U.S.C. § 524(a)(2).

Kurtzman testified that he sold Debtor a car on March 24, 2013, which would have been three years after the January 12, 2010 Discharge Order. The November 3, 2015 letter that threatened Debtor with suit that attorney Hammer sent may very well have been directed at the debt on the car loan. Subsequent to the letter, Hammer filed a second lawsuit on behalf of Kurtzman against Debtors in the state Municipal Court on December 7, 2015. See (Doc. 23-1). In that lawsuit, Kurtzman was seeking damages on the loan for the postpetition sale of the car on which Debtors defaulted. However, attorney Hammer did not specify in the November 2015 letter which loan the threat of the suit was being directed towards. Thus, Debtor had no way of knowing whether the November 2015 letter pertained to the purported $20,000 prepetition debt Kurtzman was pursuing in Common Pleas Court or the postpetition car loan that would later be pursued in Municipal Court in December, 2015. At bottom, Hammer had an obligation to identify in the November 3, 2015 letter which debt he was seeking payment for from Debtor in order to insulate his client from charges of violating the Discharge Order.

Kurtzman may have been attempting to treat the debt and Debtor's alleged postpetition promises to repay as some form of reaffirmation. It is well known that a debtor may voluntarily repay a discharged debt. § 524(f). However, strict compliance with § 524(c) and (d) is required to enforce a reaffirmation agreement on a debt otherwise dischargeable. "Reaffirmation agreements that fail to comply fully have been held void and unenforceable." In re Husain , 364 B.R. 211, 214 (Bankr. E.D. Va. 2007) ; see also Republic Bank of California, NA v. Getzoff (In re Getzoff) , 180 B.R. 572, 573-75 (9th Cir. BAP 1995) (a postpetition guarantee executed by a Chapter 7 debtor was not enforceable because no attempt had been made to obtain court approval or otherwise comply with the reaffirmation standards).

In the Post-Hearing Memorandum of Respondent Lawrence C. Kurtzman, M.D. (Doc. 33), Kurtzman suggests that the Court must find his actions "evince[ed] a contumacious frame of mind" to find a violation of the discharge injunction. In so arguing, Kurtzman erroneously conflates knowledge with malevolent intent. However, "in order to support a motion for civil contempt, a plaintiff has the burden of establishing by clear and convincing evidence that [the defendant] violated a definite and specific order of the court requiring [the defendant] to perform or refrain from performing a particular act or acts with knowledge of the court's order....There is no requirement to show intent beyond knowledge of the order "(emphasis added)." In re Mitchell , 545 B.R. 209, 226-27 (Bankr. N.D. Ohio 2016), quoting CFE Racing Products, Inc. v. BMF Wheels, Inc. , 793 F.3d 571, 598 (6th Cir. 2015) (emphasis added) (internal citations and quotation marks omitted).

In the Motion, Debtor originally sought payment of damages for attorney fees in the amount of $9,395.00 (Doc. 19). In the Post Hearing Brief (Doc. 34), Debtors' attorney amended the Motion stating "Debtor requests an award of actual damages, including attorney fees, of $5,000.00. Additionally, punitive damages and/or sanctions are appropriate and necessary given the willfulness of Dr. Kurtzman's conduct." Id.

The threatening letter, dated November 3, 2015 (Doc 28-7), attorney Hammer emailed to Debtor coupled with other sharp practices he exhibited while representing Kurtzman in the state court action which are linked to the Motion for Contempt, at best, demonstrate seriously poor judgment and, at worst, conduct sanctionable under the Ohio Rules of Professional Conduct and Rules of Civil Procedure. See , e.g., Rule 3.1 of the Ohio Rules of Professional Conduct ("a lawyer shall not bring or defend a proceeding, or assert or controvert an issue in a proceeding, unless there is a basis in law and fact for doing so that is not frivolous ")(Emphasis added); Ohio Civil Procedure Rule 11 ("The signature of an attorney ... constitutes a certificate by the attorney ... that the attorney ... has read the document; that to the best of the attorney's ... knowledge, information and belief there is good ground to support it; and that it is not interposed for delay"); and, Ohio Civil Procedure Rule 37(A)(3) ("A party seeking discovery may move for an order compelling an answer... [or] production[.] (4) For purposes of division (A) of this rule, an evasive or incomplete answer or response shall be treated as failure to answer or respond." ) (Emphasis supplied). Although the Court does not here hold attorney Hammer or the Deters Law Firm in civil contempt, the two are admonished to correct their conduct in future cases when appearing before this Court. Attorney Hammer's conduct went well beyond unprofessional crossing over into the category of reprehensible behavior. Should attorney Hammer or the Deters Law Firm appear again in this Court exhibiting such behavior it will be severely dealt with severely. See LBR 2090-2 ("[T]he Rules of Professional Conduct adopted by the Ohio Supreme Court apply in this Court.").

Debtor's attorney had very little incentive to explicitly interpose the "discharge in bankruptcy" affirmative defense, pursuant to Ohio Civ. R. 8, and much to gain in the form of the potential recovery of additional damages in the event that Kurtzman or his attorney missed recognizing that the defense had been raised. The assertion of standard affirmative defenses in an answer to a complaint which later turn out to be inapplicable is common practice among attorneys and does not constitute sanctionable conduct under Ohio Civ. R. 11. See Armatas v. Cleveland Clinic Foundation, et al. , No. 2016CA00123, 2016 WL 5940863 (Ohio Ct. App. Oct. 11, 2016) ("In accordance with Civ.R. 8, appellees admitted a number of matters in their answer and raised standard affirmative defenses, in short and plain terms, in response to appellant's lengthy 17 page complaint. We concur with appellees that appellees and their counsel were not, at such stage of the proceedings, required to engage in the level of investigation that would be appropriate during discovery."). Id. 2016 WL 5940863 at *5.